Argued and submitted June 28, affirmed December 21, 2011, petition for review denied March 8, 2012 (351 Or 649)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DONAVAN ANTHONY HESEDAHL,
*Defendant-Appellant.*

Washington County Circuit Court
C083026CR; A142525

269 P3d 90

Eric Johansen, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Klapstein argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Jeff J. Payne, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant was convicted by a jury of four counts of assault, including assault in the third degree (Count 2), ORS 163.165(1)(e),[1] and pleaded guilty to four counts of tampering with a witness. The court imposed a total term of incarceration of 96 months of imprisonment with three years of post-prison supervision, including a presumptive sentence of 14 months of imprisonment on Count 2. Defendant seeks reversal of the judgment of conviction and sentence on Count 2 only, assigning error to the denial of his motion for judgment of acquittal.[2] He argues that the state failed to prove he was "aided" by another person actually present, because verbal encouragement to the person committing the assault does not constitute aiding within the meaning of ORS 163.165(1)(e). The state responds that a defendant is "aided" if the person was "at hand, or within reach, sight or call during" the assault and "presented an added threat to the victim's safety." We agree with the state and, therefore, affirm.

We review motions for judgment of acquittal to determine whether, viewing the facts in the light most favorable to the state, a rational trier of fact could have found the elements of the crime proved beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

The victim was walking in a crosswalk across a busy intersection when the occupants of a car that was stopped at the traffic light began to verbally harass him. Defendant then leaned out of the car's rear window, and said, "Hey, it's me, Big D." The victim did not recognize defendant or the other three occupants of the car and continued walking through the crosswalk and down the street without responding to the harassment. The driver turned the car around and pulled up next to the victim. Three people, including defendant, got out

---

[1] ORS 163.165(1) provides, in pertinent part:

"A person commits the crime of assault in the third degree if the person:

"* * * * *

"(e) While being aided by another person actually present, intentionally or knowingly causes physical injury to another."

[2] We discuss only defendant's conviction for assault in the third degree, because that is the sole issue defendant raises on appeal.

and approached the victim on the sidewalk. Defendant started beating the victim—delivering approximately 30 blows to his head and body, tackling him, and hitting his head against a concrete wall.

One of defendant's companions, Cruz, stood behind defendant and encouraged him to continue the assault by saying, "That's right, bitch" and similar remarks. Another companion, Turner, stood behind defendant and encouraged him to stop the assault. The victim did not fight back. The victim said that he did not want to fight defendant, asked defendant to stop beating him, and tried to get away. However, defendant replied, "Hell, no," and continued the beating. After the assault, the victim tried to retrieve his hat, which had fallen onto the ground, but Cruz put the hat on his own head and refused to return it. The defendant and his companions returned to the car, laughing and yelling obscenities at the victim, and then drove away. The victim went to the hospital, where it took four staples to repair a laceration of his head.

As noted, defendant was charged with assault in the third degree. When the state rested, defendant moved for a judgment of acquittal, arguing that the state failed to prove that defendant was "aided" by another person actually present. The state contended that the victim testified to all elements of the crime, and the jury could believe him. The court denied defendant's motion based on the finding that,

> "in the light most favorable to the State[,] we have an individual that is totally unprovoked. And if you believe the victim, a totally unprovoked assault, and individuals getting out of the car. And at least one other individual in—in close proximity encouraging [defendant] to continue with the assault.
>
> "And the victim is on the ground, and a number of other reasons that there are more than sufficient evidence to send it to the trier of fact for Assault in the Third Degree."

The jury found defendant guilty on that count and other counts.

On appeal, defendant renews his argument that verbally encouraging a person committing an assault does not

constitute aid by another person actually present for purposes of ORS 163.165(1)(e). The state argues that, when another person present encouraged defendant to beat the victim, defendant was "aided" by that person. These arguments raise a question of statutory interpretation. We discern legislative intent by considering the text, context, and any helpful legislative history of the statute. *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). The parties essentially agree on the applicable definition of "aid," the context in which "aided by another person actually present" is used in ORS 163.165(1)(e), and the relevant portions of the statute's legislative history. However, they disagree on how those sources inform legislative intent regarding the sole issue in this case, whether verbally encouraging the person committing the assault constitutes aid within the meaning of ORS 163.165(1)(e). We now consider each source in turn to determine legislative intent on this question.

We have previously characterized aid within the meaning of ORS 163.165(1)(e) as a legal term of art, meaning " '[t]o support, help, assist or strengthen[;] [a]ct in cooperation with; supplement the efforts of others.' " *State v. Pine*, 181 Or App 105, 110, 45 P3d 151 (2002), *overruled on other grounds*, 336 Or 194, 82 P3d 130 (2003) (quoting *Black's Law Dictionary* 68 (6th ed 1990)). The parties also agree that *Webster's* dictionary definition aids in determining the meaning of ORS 163.165(1)(e): "To 'aid' means to help * * * to give help or support * * * to further, facilitate, assist * * * contribute to * * * to give assistance to * * * be of use." *Webster's Third New International Dictionary* 44 (unabridged ed 2002). Defendant argues that that definition does not encompass mere verbal encouragement. The state responds that verbal encouragement by defendant's companion satisfied that definition because that verbal encouragement gave support to and furthered or facilitated defendant's attack. We agree with the state that the legislature's use of "aided," when accompanied by the companion's proximity, encompasses verbal encouragement. A reasonable factfinder could conclude that verbal encouragement of the assault is functionally the same as offering to help if needed.

Next, we consider the context. The parties agree that ORS 161.155(2)(b), accomplice liability, and ORS

164.405(1)(b), robbery in the second degree, provide useful context to interpret the meaning of "aided" as used in ORS 163.165(1)(e). ORS 161.155(2)(b) establishes that a person is criminally liable for the conduct of another person constituting a crime if, "[w]ith the intent to promote or facilitate the commission of the crime[,] the person * * * [a]ids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]" The term "aids or abets," as used in that statute, means " 'advises, counsels, procures, or encourages another to commit a crime.' " Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 13, 13 (July 1970) (quoting *State v. Rosser*, 162 Or 293, 344, 91 P2d 295 (1939)). ORS 163.165(1)(e) does not require a subjective intent by the aider to promote or facilitate the assault.

ORS 164.405(1)(b) establishes that a person commits the crime of robbery in the second degree if the person commits the crime of robbery in the third degree and is "aided by another person actually present." Both parties rely on our interpretation of that phrase in *State v. Miller*, 14 Or App 608, 513 P2d 1199 (1973), and *State v. Jackson*, 212 Or App 51, 157 P3d 239, *rev den*, 343 Or 206 (2007). In *Miller*, we held that an "aider" within the meaning of ORS 164.405 includes a person who was "at hand, or within reach, sight or call" of the principal during the commission of the crime, and who "present[ed] an added threat to the victim's safety." 14 Or App at 611 (citing Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 148-150, 154-57 (1970)). We concluded that the state had satisfied its burden to prove that a purse snatcher was "aided by another person actually present" with evidence that the defendant's companion stood 25 feet away during the offense and then ran from the scene with the defendant, because a jury could legitimately infer that the companion was within easy access to aid the purse snatcher if necessary. *Id.* Thus, we affirmed the defendant's conviction of robbery in the second degree when the getaway driver was actually present, within sight, and able to aid.

Similarly in *Jackson*, we held there was sufficient evidence for a jury to infer that a purse snatcher was "aided by another person actually present" when the defendant's

companion was sitting in a getaway car 25 feet away. 212 Or App at 53. The defendant in *Jackson* argued that "a jury should not be permitted to infer the requisite capability of intervention merely from the physical proximity of another person acting as a getaway driver." *Id.* at 57. We considered the totality of the circumstances and held that a jury could find that the getaway driver "aided" the purse snatcher because the robbery occurred in the companion's plain view ("within reach, sight or call") and while the companion was sitting in a car with its engine running, which presented "a very real and immediate 'added threat to the victim's safety.' " *Id.* (quoting *Miller*, 14 Or App at 611).

Defendant contends that *Miller* and *Jackson* addressed only the meaning of "actually present" and not what constitutes aiding. We disagree. In *Jackson*, the defendant argued that the state must prove aiding independently from proximity. 212 Or App at 53. We expressly rejected that argument:

> "In particular, defendant argues that the state's evidence proved only that his codefendant, Rennells, was present in order to facilitate the defendant's getaway from the robbery and that that was insufficient, as a matter of law, to establish that, in committing a third-degree robbery, defendant was 'aided by another person actually present' within the meaning of ORS 164.405(1)(b). The state responds that, under ORS 164.405(1)(b), the state was required only to establish that Rennells was in such physical proximity to the robbery *as to be readily capable of assisting defendant in exerting force upon the victim.* We agree with the state's understanding of the statute and determine that *the evidence regarding Rennells's participation was legally sufficient.*"

*Id.* (emphasis added). Thus, a jury can legitimately infer aiding from the proximity of another person to the defendant and that person's capability to assist the defendant in exerting force upon the victim.

The facts in this case are analogous to those in *Miller* and *Jackson*. Defendant's companion, Cruz, was standing on the sidewalk behind defendant and, therefore, was "at hand, or within reach, sight, or call." The jury could infer that Cruz's verbal encouragement prolonged or intensified the

assault and therefore "presented an added threat to victim's safety." Thus, we conclude based on the facts of this case that physical presence along with verbal encouragement constitutes "aid" under ORS 163.165(1)(e).

This interpretation is also consistent with the legislative history of ORS 163.165(1)(e). Although that history shows that the bill was directed primarily at gang assaults, the bill's proponents also made clear that the act of encouraging an assault while being physically present constitutes aiding. *See* Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, Mar 19, 1991, Tape 56, Side A (statement of Terry Leggert); Testimony, House Committee on the Judiciary, Subcommittee on Crime and Corrections, HB 2018, Mar 19, 1991, Ex B (statement of Terry Leggert).

Viewing the evidence in the light most favorable to the state, a jury could reasonably find that another person standing by encouraged defendant and therefore aided defendant in the assault of the victim. Under the totality of circumstances, the state provided sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant was "aided by another person actually present."

Affirmed.