Argued and submitted March 13, 2013, affirmed March 26, 2014

In the Matter of J. C. L.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

J. C. L.,
*Appellant.*

Yamhill County Circuit Court
00356282;
Petition Number J12566;
A147132

325 P3d 740

Alexander Freeman argued the cause for appellant. With him on the opening brief was Angela Sherbo. On the reply brief was Angela Sherbo.

Rebecca M. Johansen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

DUNCAN, P. J.

## DUNCAN, P. J.

In this juvenile delinquency case, youth appeals from a judgment determining that he is within the jurisdiction of the juvenile court for conduct that, if committed by an adult, would constitute the criminal offenses of first-degree encouraging child sexual abuse, ORS 163.684(1)(a)(A) (2007), (Counts 1 and 3) and second-degree encouraging child sexual abuse, ORS 163.686 (2007) (Counts 2 and 4).[1] Youth advances four assignments of error. In his first and second assignments, he contends that the juvenile court erred in denying his motion to suppress evidence of child pornography found on his computer, which was seized without a warrant from a computer repair person. In his third and fourth assignments, he contends that the juvenile court erred in denying his motions for judgment of acquittal on the four offenses, asserting that, with respect to Counts 2 and 4, the state failed to prove that youth *knowingly* possessed the prohibited images, and that, with respect to Counts 1 and 3, it failed to prove that he knowingly possessed the images *with the intent to duplicate or display them*. For the reasons explained herein, we affirm the judgment.

We review the juvenile court's rulings for errors of law. We defer to the court's findings of historical fact if there is constitutionally sufficient evidence to support them, and in the absence of express findings, we resolve factual disputes in a manner consistent with the trial court's ultimate conclusions. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). Within those guidelines, we summarize the general facts from the juvenile court's findings and other record evidence. *See State v. Guggenmos*, 350 Or 243, 245, 253 P3d 1042 (2011).

Youth was 16 years of age at the time of the relevant events. In March 2007, youth's uncle, Conahan, came to the attention of police when they linked him to the IP address of a computer that was downloading child pornography. In May 2007, police detective Elliott executed a search warrant at

---

[1] Defendant was prosecuted under the 2007 versions of both ORS 163.684 and ORS 163.686, and all references to the statutes in this opinion are to those versions. The statutes were amended in 2011. Or Laws 2011, ch 515, §§ 3-4.

Conahan's residence. Based on images found on Conahan's computers and thumb drives, Elliott arrested Conahan for possession of child pornography. Conahan made statements to police that led them to investigate youth.

Youth had a computer in his bedroom. When it needed repairs, he sought help from Dutton, a high school student with an informal computer repair business. On several occasions, Dutton had visited youth's home to repair his computer and saw Conahan at the house. In March 2007, Dutton took youth's computer to his own home to repair it. Again, in May 2007, Dutton took youth's computer to his home for repairs.

On May 23, 2007, two days after Elliott arrested Conahan, Elliott attempted unsuccessfully to contact youth. He then went to Dutton's house, where, without a warrant, he seized youth's computer and its hard drive.

Eight days later, police obtained a warrant to search youth's computer. Detective Wiltse found installed on youth's computer a software program called "Limewire," a "peer-to-peer" network that allows users to search the "shared" folders and files of Limewire users whose computers are also connected to the Internet and running Limewire. In a "shared" folder on youth's computer, Wiltse found images and videos of child pornography identical to the images and videos found on Conahan's thumb drive. The shared folders and files were marked "hidden," and they could not, in fact, be shared through Limewire. The state did not present evidence as to whether youth's computer was connected to the Internet, nor did it present evidence that the hidden folders or files had ever been shared through Limewire.

Police took youth into custody, and he was charged with the described offenses for which the juvenile court ultimately found him to be within the court's jurisdiction. In a pretrial motion, youth moved to suppress the evidence obtained as a result of the warrantless seizure of his computer, asserting that the seizure was not supported by one of the limited exceptions to the warrant requirement and therefore violated his rights against unreasonable searches

and seizures under Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution.[2]

At the suppression hearing, the state presented testimony from Elliott, the detective who had seized the computer. Elliott testified that, on May 21, 2007, when he had arrested Conahan, Conahan had explained how the child pornography came to be on his computer. Conahan said that, when he searched Limewire for music, Limewire would return images of child pornography and that, to avoid the return of pornographic images on subsequent searches, he had decided to download them to his computer. He told Elliott that youth had experienced the same difficulty with Limewire and had unsuccessfully tried to help Conahan remove the child pornography from his computer. Unable to remove the images, youth had shown Conahan how to create "hidden" folders on Limewire in which to store the images, to make them more discrete and less accessible. Conahan told Elliott that, in the past, he had taken his computer to Dutton to have the images removed.

Elliott testified that, when he went to Dutton's house on May 23, 2007, Dutton informed him that he was working on youth's computer to remove a virus and had not seen any child pornography on the computer. Dutton told Elliott that, when youth had given him the computer for repair, youth had told Dutton to back up everything, but that, on May 22, 2007—the day after Conahan's arrest—youth had called and requested that Dutton delete the contents of the computer, including the back-ups. Dutton told Elliott that he had scanned youth's computer for viruses, but had not deleted anything yet.

Elliott saw that youth's hard drive had been removed from the computer tower and was connected to Dutton's computer by a cable and that Dutton had already created

---

[2] Article I, section 9, of the Oregon Constitution provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers and effects, against unreasonable search, or seizure[.]"

The Fourth Amendment to the United States Constitution provides, in part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

a back-up of youth's hard drive. Based on Conahan's statements and youth's recent request, Elliott believed that there was child pornography on youth's computer. Given youth's request and the fact that youth's hard drive was presently connected to Dutton's computer, Elliott believed that the destruction of evidence was imminent, and he seized youth's computer and hard drive. Elliott then left, but returned to Dutton's home one hour later and obtained Dutton's consent for the seizure of his own computer.

The juvenile court denied youth's motion to suppress the evidence found on youth's computer. The court concluded that, considered together, the information that Elliott had obtained from Conahan and the timing of youth's request to delete the contents of the computer and its back-up provided probable cause that there was child pornography on youth's computer. The court concluded, further, that the warrantless seizure of youth's computer was justified by exigent circumstances, "especially given it was at the time connected to the computer of [Dutton,] who had the capacity to follow through on [youth's] request to remove it all."

The case proceeded to trial. At the close of the state's evidence and at the close of trial, youth moved for a judgment of acquittal on all counts. The juvenile court denied the motions.

On appeal, youth assigns error to the denial of his motion to suppress and the denial of his motions for judgment of acquittal. We first address youth's assignments of error relating to the denial of his motion to suppress.

In his first assignment of error, youth contends that the evidence resulting from the seizure of his computer should have been suppressed because it was not justified by either a warrant or an exception to the warrant requirement. The state has never disputed that Elliott seized youth's computer when he took it from Dutton's home. Police may search or seize property without a warrant without violating the Oregon or federal constitutions when they have probable cause to believe that the property is evidence of a crime, upon a showing of exigent circumstances. *State v. Machuca*, 347 Or 644, 652-57, 227 P3d 729 (2010) (warrantless search permissible if officer has probable cause

to believe that crime was committed and exigent circumstances exist); *State v. Meharry*, 342 Or 173, 177, 149 P3d 1155 (2006) (same). It is the state's burden to show exigency, by establishing both that the destruction of evidence was imminent and that a warrant could not have otherwise been expeditiously obtained. *Machuca*, 347 Or at 656. Although, on appeal, youth concedes that Elliott had probable cause to believe that youth's computer contained evidence of a crime, he contends that, contrary to the juvenile court's determination, no exigency required it to be seized without a warrant.

Exigent circumstances exist when a reasonable person in the police officer's position would determine under the circumstances that immediate action is necessary to prevent the disappearance, dissipation, or destruction of evidence. *State v. Snow*, 337 Or 219, 94 P3d 872 (2004); *Meharry*, 342 Or at 177; *State v. Miller*, 300 Or 203, 229, 709 P2d 225 (1985); *State v. Parras*, 110 Or App 200, 203, 822 P2d 151 (1991); *see United States v. Alaimalo*, 313 F3d 1188, 1192-93 (9th Cir 2002), *cert den*, 540 US 895 (2003) (exigent circumstances "are present when a reasonable person [would] believe that entry * * * was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts").

In youth's view, there was no exigency, because, in light of the circumstances then existing, it was not objectively reasonable for Elliott to conclude that Dutton might destroy the evidence on youth's computer. Youth emphasizes that Dutton had no reason to tamper with evidence, and that Dutton had been polite and cooperative and—in fact— had volunteered the information concerning youth's request to delete the contents of the computer. Youth contends that, in light of the absence of any indication that Dutton had engaged in wrongdoing, the fact that youth's hard drive was connected to Dutton's computer could not support a reasonable fear of imminent destruction of evidence and supported only the inference that Dutton was in the process of fixing youth's computer. In youth's view, that evidence, together with the fact that, despite having received youth's request to delete the computer's contents the day before, Dutton

had not yet done so, supports an inference that Dutton was not likely to destroy the contents of the computer. Further, youth proposes that Elliott must in fact have trusted Dutton not to destroy the evidence, or he would not have left Dutton alone with his own computer for approximately one hour before returning to seize it, even though it contained a copy of youth's hard drive. Finally, youth contends that a warrant reasonably could have been obtained by telephone with Elliott waiting on the premises.

Although youth has described inferences that might be drawn from the evidence in support of a conclusion that there was no exigency, we agree with the state that the record supports the juvenile court's conclusion that Elliott reasonably believed that Dutton was about to erase youth's hard drive and that, if he left youth's computer within Dutton's control to obtain a warrant, the destruction of evidence was imminent. At the time he seized youth's computer, Elliott was aware that Dutton had previously helped Conahan delete child pornography from his computer. He was aware that youth had instructed Dutton to delete everything on his computer, including back-up files. He saw that youth's hard drive was hooked up to Dutton's computer and that Dutton had already copied youth's hard drive onto his own computer. Together, that information supported Elliott's decision that it was necessary to seize youth's computer to avoid the imminent destruction of evidence on youth's computer, and that leaving the computer within Dutton's control for any length of time to obtain a warrant would have resulted in a loss of the evidence. For that reason, we conclude that the juvenile court did not err by concluding that the warrantless seizure of youth's computer and hard drive was justified by the exigent circumstances exception to the warrant requirement.

In his second assignment of error, youth asserts that the juvenile court erred by denying youth's motion to suppress, because the eight-day delay between the seizure of the computer and the issuance of a warrant violated defendant's rights under Article I, section 9, and the Fourth Amendment. Youth admits that he did not preserve that error; he did not make any argument in the juvenile court based on the delay between the seizure of the computer and

the issuance of the warrant. Therefore, youth asks us to review the alleged error as an error apparent on the face of the record. ORAP 5.45(1). In support of his assignment of error, youth relies on federal cases, particularly *United States v. Dass*, 849 F2d 414 (9th Cir 1988), in which the court held that a seven-day delay between the seizure of packages and the issuance of a warrant to search them was unreasonable. *See also United States v. Mitchell*, 565 F3d 1347 (11th Cir 2009) (21-day delay between seizure of hard drive and issuance of warrant to search it was unreasonable). We decline to exercise our discretion to review youth's argument. As youth acknowledges, whether a delay between the seizure of property and its search is reasonable must be determined "in light of all the facts and circumstances." *United States v. Mayomi*, 873 F2d 1049, 1054 n 6 (7th Cir 1989). In this case, because youth did not raise any argument based on the delay, the parties did not have occasion to develop a factual record regarding the reasons for the delay. Therefore, plain error review is inappropriate. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991).

Having determined that the juvenile court did not err in denying youth's motion to suppress, we turn to youth's claims that the court erred in denying his motions for judgment of acquittal. In his fourth assignment of error, youth argues that the court should have acquitted him of Counts 2 and 4 because the state failed to prove that he *knowingly* possessed or controlled photographs involving sexually explicit conduct involving a child, as required by ORS 163.686. That statute provides that a person commits the offense of encouraging child sexual abuse in the second degree if the person

"[k]nowingly possesses or controls any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child for the purpose of arousing or satisfying the sexual desires of the person or another person[.]"

In reviewing a challenge to the sufficiency of the evidence, our task is to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams*, 313 Or 19, 828 P2d 1006, *cert den*, 506 US 858 (1992). Here, the state

argues, and we agree, that there was sufficient evidence that youth knowingly possessed the prohibited materials.

There is evidence that the files containing the videos and images were downloaded to youth's computer from one of Conahan's thumb drives. The files were located in a "shared" folder. And, the files were further organized within the "shared" folder: They were all located in a subfolder entitled "download file," and the videos were located in a further subfolder entitled "VI." There was evidence that the subfolders are not "system folders" or "default folders" that would be automatically created. Thus, the naming and storage of the files indicates that they were downloaded and saved intentionally and with an awareness of their contents. That evidence, along with the evidence that the computer belonged to youth and had been kept in his bedroom, and that youth had instructed Dutton to delete everything on it, including the back-up, was sufficient to allow a rational trier of fact to find that youth knowingly possessed images of child pornography.

Once again, youth offers an alternative view of the evidence. Youth does not deny that images of child pornography were on his computer, but he asserts that there is no evidence that he was aware that they were there or that he *knowingly* possessed or controlled them. Youth's theory is that, in light of the fact that Conahan, a convicted sex offender, was at youth's house on a regular basis, the state should have been required to disprove the possibility that Conahan had downloaded the images to youth's computer. Youth contends that his statement to Dutton, assuming he made it, requesting deletion of the computer's contents, does not prove that youth knowingly possessed child pornography; rather, it shows only that, in light of his knowledge of Conahan's arrest, he was aware of the possibility that Conahan had put child pornography on his computer. Although the juvenile court could have found the facts consistent with youth's version, it did not and was not required to do so in light of the countervailing evidence, which we have concluded permitted a rational trier of fact to find that youth knowingly possessed the images. Accordingly, the juvenile court did not err in denying youth's motion for judgment of acquittal on Counts 2 and 4.

We turn to youth's third assignment of error, that the juvenile court erred in denying his motion for judgment of acquittal on Counts 1 and 3, which charged him with first-degree encouraging child sexual abuse in violation of ORS 163.684(1)(a)(A). That statute provided:

"A person commits the offense of first-degree encouraging child sexual abuse if he

"(a)(A) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child or possesses such matter with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it[.]"

ORS 163.684(1)(a)(A). The Supreme Court explained in *State v. Bray*, 342 Or 711, 718, 160 P3d 983 (2007), that a person violates the statute if he or she commits any one of those acts. Here, the state charged in Counts 1 and 3 of the delinquency petition that youth knowingly possessed the pornographic images "with intent to duplicate or display the photographs[.]" In finding youth to be within the juvenile court's jurisdiction on those counts, the court found that youth had intended both to duplicate and to display the images.

Youth contends that the juvenile court erred in denying his motion for a judgment of acquittal on Counts 1 and 3, because the evidence is insufficient to allow a rational trier of fact to find that youth intended either to duplicate or to display the pornographic images on his computer. At the hearing, youth contended that the evidence of an intent to duplicate was insufficient because there is no evidence that youth's computer was attached to a printer or that it was ever connected to the Internet while it was in youth's possession, and that there is no other evidence from which the juvenile court could infer an intention to duplicate any of the images. Youth further argued that merely viewing images on one's computer does not satisfy the requirement for "displaying" the images; rather, he asserted that there must be an intent that others look at them, and there is no evidence here that the youth intended that others view the images.

As youth correctly pointed out, in *Bray*, the Supreme Court held that the prohibition in ORS 163.684 against displaying child pornography means showing the images either publicly or to others or possessing it with that intent. 342 Or at 719. Thus, youth contended, the evidence is not sufficient to establish an intent to "display" if it shows only that youth had the intent to view the images himself. He makes the same arguments on appeal.

The state does not directly respond to youth's points. Rather, the state relies on the juvenile court's alternative finding—that youth intended to duplicate or display the files by sharing them with others through Limewire, and that the evidence shows that Limewire (a software with which youth was familiar) is designed specifically to facilitate the sharing of files among connected users. Additionally, the state notes, there is evidence from which it could be found that youth copied the images and videos from a thumb drive and that he placed them in a "shared" folder, the logical inference being that youth had an intention to share them, *i.e.*, to show them to others who were connected to the network. *See State v. Urbina*, 249 Or App 267, 278 P3d 33, *rev den*, 353 Or 103 (2012) (trier of fact could infer that defendant understood the most basic sharing features of the file-sharing software that he had installed on his computer).

Youth contends that any inference that might be drawn from the fact that the images were in a "shared" folder is negated by the inference drawn from the fact that the folders were marked "hidden" and could not, in fact, be shared. The state rejoins that there is also evidence from which it is reasonable to infer that youth would not have known that images in a "hidden" file could not, in fact, be shared.

Youth is correct that, once again, the evidence permits competing inferences: On the one hand, from the evidence that youth placed the images in a "shared" folder and was familiar with Limewire, the trier of fact could find that youth had an intention to share the images. On the other hand, from the evidence that youth had marked the files "hidden" and, as so marked, they could not in fact be shared, it could be inferred that youth had no intention to

share them. However, viewing the evidence, as we must, in the light most favorable to the state, we conclude that it was sufficient to allow the juvenile court to find, as it did here, that youth had an intention to share the files. Accordingly, it was up to the trier of fact to resolve the conflict. *State v. Thayer*, 32 Or App 193, 573 P2d 758, *rev den*, 283 Or 1 (1978). We therefore conclude that the juvenile court did not err in denying youth's motion for judgment of acquittal on the counts charging first-degree encouraging child sexual abuse.

Affirmed.