Submitted November 3, 2022, affirmed June 14, 2023

In the Matter of D. B. O.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

D. B. O.,
*Appellant.*

Washington County Circuit Court
20JU02812; A175938

532 P3d 921

Youth appeals from the juvenile court's judgment finding him to be within the court's jurisdiction for acts that, if committed by an adult, would constitute sexual abuse in the third degree, ORS 163.415. He argues that the state failed to prove beyond a reasonable doubt that he touched the complainant for the purpose of sexual arousal. *Held*: Although youth did properly preserve the assignment of error in his closing argument, an inference that youth acted with a sexual purpose is reasonable in light of the evidence in the record. Youth acted with a sexual purpose and subjected complainant to sexual contact to which he did not consent.

Affirmed.

Brandon M. Thompson, Judge.

Erica Hayne Friedman and Youth, Rights & Justice filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Eric Seepe, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

MOONEY, J.

Affirmed.

## MOONEY, J.

Youth, D, appeals from the juvenile court's judgment finding him to be within that court's jurisdiction for acts that, if committed by an adult, would constitute sexual abuse in the third degree.[1] ORS 163.415.[2] D assigns error to the adjudication for third-degree sexual abuse, arguing that the state failed to prove beyond a reasonable doubt that D touched the complainant's penis for the purpose of sexual arousal, a required element of the crime. ORS 163.415(1)(a); ORS 163.305(5).[3] We conclude that the evidence was sufficient and that the trial court did not err. We affirm.

## STANDARD OF REVIEW

We decline D's request for *de novo* review as unwarranted. ORAP 5.40(8)(c).[4] Instead, we review the juvenile court's legal conclusions for errors of law and, in doing so, "we *** review the record to determine whether the evidence is legally sufficient to support the adjudication." *State v. R. W. G.*, 288 Or App 238, 240, 404 P3d 1131 (2017). D "face[s] an uphill battle" in requesting reversal of his adjudication "on the alleged insufficiency of the evidence." *State v. Rodriguez/Buck*, 347 Or 46, 55, 217 P3d 659 (2009). "We defer to the court's findings of historical fact if there is constitutionally sufficient evidence to support them, and in the absence of express findings, we resolve factual disputes in a manner consistent with the trial court's ultimate conclusions." *State v. J. C. L.*, 261 Or App 692, 694, 325 P3d 740 (2014). When analyzing the sufficiency of the evidence, we make no distinction between direct and circumstantial

---

[1] D was also adjudicated for harassment, ORS 166.065(4)(a)(A), but he has not appealed that adjudication.

[2] ORS 163.415 states, in part:

"(1) A person commits the crime of sexual abuse in the third degree if:

"(a) The person subjects another person to sexual contact and:

"(A) The victim does not consent to the sexual contact ***."

[3] ORS 163.305(5) provides, "'Sexual contact' means any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

[4] ORAP 5.40(8)(c) states, in part, "The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases."

evidence as to the degree of proof required. *State v. Lerch*, 296 Or 377, 396, 677 P2d 678 (1984). We do not weigh the evidence to reach our own verdict, but instead view the evidence in the light most favorable to the state and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *R. W. G.*, 288 Or App at 239-40. We state the facts in that light, drawing from the court's findings, the testimony, the surveillance video obtained from the bus, and other record evidence.

## THE EVIDENCE

J, a 13-year-old boy, was seated immediately next to the window on a school bus when D, a 12-year-old boy who was observably larger in stature than J, took the aisle seat next to J. The bus was fairly full as it began transporting children of similar ages home from school. Almost immediately upon taking a seat next to J at 4:00 p.m., D opened his laptop and showed J the screen. At 4:02 p.m., D turned to J and again showed him his laptop screen as he lifted his left index finger to his lips in a manner consistent with a request to remain quiet. Over the course of the next fifteen minutes, D repeatedly tried to show J his laptop screen, and he also attempted several times to show it to the boys in the seat in front of him. J shielded his eyes when D first showed him the screen and, after that, mostly looked out the window or at his cell phone when D again displayed the screen for J to see. At 4:08 p.m., D stood while holding his laptop open and lifted it up and over the back of the seat in front of him, showing it to the boys in that seat, and said "look, a fucking dick." At 4:12 p.m., D stood, continuing to hold his laptop, and announced that he had "high-quality porn." D remained largely focused on his laptop screen for the first fifteen minutes of the bus ride home, at times bending over it in his lap with his head pushed into the seat ahead of him.

At 4:15 p.m., D reached over the seat in front of him and handed his laptop to one of the boys seated there. D then placed J in a headlock and pushed J down where J was seated. D was facing J with his back to the aisle while he was pushing J against the wall. At 4:16 p.m., a large number of children exited the bus, and at 4:17 p.m., D was on

top of J on the floor immediately in front of their seat. About one minute later, D stood up and looked over the seatback and viewed his laptop screen which was being held by one of the boys in the next seat. D then turned back to J and again pressed him into the wall. D's arms were down, and his elbows moved back and forth toward J, but given his position, the video did not capture what D was doing with his hands. D stood to look over the seatback at his laptop and then returned to J at least twice before the next group of children left the bus at 4:21 p.m. J started to yell "stop!" almost immediately at 4:15 p.m. When D first pushed him into the seat, and by 4:20 p.m., J's volume had increased, and he was yelling that D was trying to rape him and that D had touched his penis.

J testified to the following progression of events as the state played the bus surveillance video for the court:

"[J]:   Well, he was messing around. We were horseplaying at first, but then it started to get kind of annoying and I told him to stop, because he started—he arm-locked me with my head in, and then he pushed me down where I'm sitting.

"[PROSECUTOR]:   When you say 'horseplay,' what does that mean to you?

"[J]:   He was basically just, like- like pushing me around, but I honestly started to think that he was messing with me.

"* * * * *

"[PROSECUTOR]:   Well, how—how did it change?

"[J]:   It changed when [D] started grabbing me down below by my penis.

"[PROSECUTOR]:   *** Was he touching you in the region of your penis, when you say 'by,' or was he touching you, grabbing you by it? Help us understand how he was—

"[J]:   He was grabbing me—

"[PROSECUTOR]:   —touching you?

"[J]:   —by my penis.

"[PROSECUTOR]:   Was this over the clothes or under the clothes?

"[J]:   Over the clothes.

"[PROSECUTOR]:   Was he saying anything?

"[J]:   He was moaning and saying, 'Daddy' and 'Uhh' in a really sexual way.

"* * * * *

"[PROSECUTOR]:   How did you get back to your seat?

"[J]:   I[] tr[ied] to crawl back to my seat, because [D] pinned me down and put me in an arm lock.

"* * * * *

"[PROSECUTOR]:   Is that you yelling stop?

"[J]:   Yes. At this point, I was getting really annoyed, because he kept pushing me down by my head and he kept grabbing me and he kept pushing me.

"[PROSECUTOR]:   The person who said, 'You frickin' start raping me. You grabbed my penis, [D],' who is that?

"[J]:   That was me."

J also testified that he "may have overreacted a little bit, but [D] did grab my penis multiple times." D did not stop until just before he got off the bus. J further testified that D seemed to think that the incident was funny; J did not think it was funny.

The juvenile court found D to be within the juvenile court's jurisdiction on Count 1, sexual abuse in the third degree, and Count 2, harassment involving a sexual or intimate part. In particular, the court made these findings as it announced its ruling at the conclusion of the trial:

"But here's why I'm finding you in jurisdiction on both counts. Here's the notes and phrases that I wrote down. 'I want quality porn.'

"And then you hand the laptop to [another student] and say, 'Look at that dick.'

"And then there's the testimony from [J] that [D] was moaning and saying, 'Daddy,' and 'Uhh' in a sexual way.

"And then [D was] yelling about the fact that [J] was calling [him] 'Daddy.'

"This Court more than can infer that you were sexually charged on this bus for whatever reason, and that you were acting in this way to not only have sexual contact, but you were doing it and touching a sexual intimate part, and he did not consent.

"As far as the Sexual Harassment, I have no question you touched his penis repeatedly and that he was very clear screaming on that bus that's not what he wanted.

"So, that being said, I am aware of the phrase, '[D] thought it would be funny to touch his penis,' but that may have been his interpretation, but all your statements, which I clearly heard, show otherwise."

## PRESERVATION

Because the state disputes preservation, we address that issue first. D relies on his closing argument to support his contention that he preserved his legal sufficiency argument. We begin with the axiom that not just "any" closing argument will preserve the legal sufficiency of evidence for appeal:

"There is an important distinction between (1) an argument that seeks to convince a trial court, sitting as fact finder, not to be *persuaded* by the evidence favoring the other party, and (2) an argument that seeks to convince the trial court that the evidence is *legally* insufficient to support a verdict for that other party."

*R. W. G.*, 288 Or App at 240 (emphases in original). In *R. W. G.*, we concluded that the youth's closing argument lacked "any contention that the evidence was legally insufficient" or even an indirect reference to the point that the court "could not" find in favor of the state. *Id.* at 241. Instead, the youth's argument was "aimed entirely at persuading the juvenile court as a fact finder that it should have at least a reasonable doubt as to youth's guilt." *Id.* (emphasis omitted). Because the youth did not make the argument in his closing that the evidence was insufficient as a matter of law, we concluded in that case that he failed to preserve his argument for appeal. *Id.* at 242.

Here, D relies on the following argument made by his lawyer at the close of evidence in support of his preservation argument:

"*** Your Honor saw the video in this case and you heard from—from [J], who described the incidents starting out as horseplay. He started describing a whole lot more than that after that point.

"The problem with that, Your Honor, is that he indicated—he indicated some exaggeration there in the words that he was using. And we know that the words of a bunch of 12- and 13-year-olds when they're in that kind of situation they can say all kinds of things.

"The other thing you don't see in that video, is you don't see any touching or grabbing of the penis or anything of that nature. You don't see that.

"You have *** [J's] statement, most importantly, Your Honor, that—and this is important particularly as to Count 1, the Sex Abuse in the Third Degree, he said, '[D] thought it would be funny to grab my penis.'

"Now, does that show sexual intent or does that show—even if you—even if you believed every single word that [J] said, does that show sexual intent by [D], or does that show that this was, in fact, an incident of horseplay on the bus, even if it *** went too far? Thinking something would be funny doesn't show sexual intent.

"You also saw in the video that there was a lot of physical contact between these youth. And what Your Honor can and should find is that this was not a case where there was sexual intent or gratification purposes involved. That this was a case involving harassment.

"You heard the testimony of [J] and he said when—at the point in the video when his voice was starting to escalate a whole bunch, that he was really annoyed that, '[D] kept grabbing my head and pushing me,' and that's when he was getting really angry and pushing back.

"And so while Your Honor could find that there was offensive physical contact to what you see on the video there, if Your Honor is inclined to believe that [J] did, and find [as] fact that grabbing the head and pushing him [was] offensive physical contact, that doesn't mean that it rises to the level in Count 1 of Sexual Abuse in the Third Degree. So that charge should be dismissed."

That argument, unlike the one made in *R. W. G.*, was sufficient to preserve D's legal sufficiency argument because

it gave the trial court "enough information to be able to understand the contention and to fairly respond to it." *State v. Walker*, 350 Or 540, 552, 258 P3d 1228 (2011). The key language used by D's lawyer was: "* * * [T]hat doesn't mean that it rises to the level in Count 1 of Sexual Abuse in the Third Degree. So that charge should be dismissed." D was not attempting with those words to "persuad[e] the juvenile court as a fact finder" to find that D had not done what he was alleged to have done. *R. W. G.*, 288 Or App at 241 (emphasis omitted). D's lawyer was instead arguing that D's conduct simply did not fit into the elements of the charged crime, in other words, that D's conduct did not amount to third-degree sexual abuse. *See T. L. A. v. Vierra*, 295 Or App 576, 578, 435 P3d 826, *rev den*, 364 Or 723 (2019).

## ANALYSIS

We turn to the merits. As noted above, under ORS 163.415, a person commits third-degree sexual abuse when "[t]he person subjects another person to sexual contact" and "[t]he victim does not consent to the sexual contact." ORS 163.305(5) defines sexual contact as: "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." The state must establish the purpose of sexual arousal or gratification beyond a reasonable doubt to prove the crime. *State v. Fitch*, 47 Or App 205, 208, 613 P2d 1108 (1980).

D argues that the state did not produce sufficient evidence that he subjected J to sexual contact because the record does not support an inference that D touched J's penis "for the purpose of arousing or gratifying the sexual desire of either party." At trial, D argued that the video did not depict him actually touching J's penis. D argued then, as he does now, that while his conduct may have been "foolish or offensive," he was only 12 years old at the time, and his conduct amounted to nothing more than "horseplay." D argues that there was no evidence that he "made any serious expressions of sexual arousal," that he was sexually interested in J, or that he "actually appeared sexually aroused,

touched his own genitals, or touched J's penis in such a way as to indicate that he was trying to arouse J."

The state responds that sexual intent may be, and most often is, established through circumstantial evidence and that the record contains sufficient evidence to permit a reasonable inference that D touched J's penis for the purpose of sexual arousal. The state points to evidence that D was looking at pornography on the bus ride as relevant to D's sexual purpose. *See State v. Saunders*, 294 Or App 102, 104, 429 P3d 1049 (2018), *rev den*, 364 Or 294 (2019). When combined with the fact that D touched J's penis multiple times on that bus ride, the state argues that this was third-degree sexual abuse, and not horseplay. We agree with the state.

"'[P]urpose' is generally provable only by circumstantial evidence," *Fitch*, 47 Or App at 208, and the question is whether D's conduct, given all the circumstances, was sufficient for the court to conclude beyond a reasonable doubt that D touched J with the purpose of arousing or gratifying the sexual desire of either himself or J. The fact that D may have had "sex on the mind," as the state argued in its closing argument, or that the situation was "sexually charged," as the juvenile court later found, would not alone be sufficient to support a finding that D acted with sexual purpose. But we understand the court's finding that the events occurred in a "sexually charged" situation as providing its assessment of the context for the conduct about which it made other, more specific findings.

In his closing argument to the juvenile court, D relied on the fact that the surveillance video did not specifically show his hand touching J's penis to argue that he did not do so. Although he does not address that argument on appeal, there was evidence that J stated several times that D was touching his penis while it was happening. Those contemporaneous statements were audibly recorded on the surveillance video. And although the video did not visually capture D's hand touching J's penis, it did show D with his back to the aisle, his arms down, and his elbows moving back and forth toward J, who was pinned against the wall. That evidence supports the court's finding that D

touched J's penis multiple times while they were on the bus. Additionally, J later testified that D touched his penis, and that testimony would itself have been sufficient to prove the touching of a sexual or intimate part if the court found it credible. The juvenile court did find, based on the evidence before it, that D touched J's penis multiple times. That finding is supported by the evidence.

Similarly, although the contents of D's laptop screen were not captured by the surveillance video that was introduced into evidence, and while no witness testified to what they observed on the laptop, D did not argue below and does not now dispute that there were, in fact, pornographic images on the screen. Additionally, D's contemporaneous words and conduct support a reasonable inference that he was observing and displaying pornography throughout the thirty minutes that he was on the bus that day. To be sure, D turned away from his laptop screen during the nine-minute portion of the bus ride when he repeatedly pushed J into the wall and touched J's penis. But even during that nine-minute period of time, D briefly stood up, at least twice, to look over the seatback at his laptop, and he then turned back to his assault of J. The evidence that D observed pornographic images immediately before, and during, the abusive conduct is relevant to his intent, and it increases the "probability that [D] acted with a sexual purpose in his conduct toward [J]." *Saunders*, 294 Or App at 104. The juvenile court found that D was viewing pornographic images on his laptop and that finding is supported by the evidence.

D relies on *State ex rel Juv. Dept. v. Evans*, 171 Or App 611, 613-15, 15 P3d 1003 (2000), to support his contention that the evidence is insufficient to establish that he acted with sexual purpose. *Evans* involved a charge of public indecency under ORS 163.465 where we determined that evidence that a youth who exposed himself to someone outside their kitchen window and called out "[i]s your penis bigger than mine?" was insufficient to establish the purpose of sexual arousal. 171 Or App at 613-14. We explained that

> "the circumstances do not establish beyond a reasonable doubt that, in exposing himself to [the alleged victim], youth acted with the intent of arousing sexual desire. There is, for

example, no evidence that youth's penis was erect, that he was engaged in any type of sexual touching or that he fondled himself or anyone else at the time of the incident. Nor, in our view, is youth's contemporaneous statement regarding the size of his penis conclusive of the requisite intent. Rather, that statement might reasonably be regarded as evincing an immature and 'prankish' intent, if anything, to compare his penis to that of his friend."

*Id.* at 615. We reviewed *Evans de novo*, and it is not known whether we would have reversed jurisdiction if we had instead reviewed that court's decision for sufficient evidence. But even assuming that we would have reversed *Evans* under either standard of review, this case—unlike *Evans*—has evidence that D was observing pornography and that he touched J's penis multiple times during the bus ride. Although D offers an alternative view of the evidence that the juvenile court could have found credible—that he was engaging in horseplay—the court did not do so. Given the countervailing evidence, the juvenile court was permitted to find instead that D touched J's penis for the purpose of sexual arousal. *See J. C. L.*, 261 Or App at 701 (reaching a similar conclusion that evidence was sufficient to allow a rational trier of fact to find that the youth knowingly possessed pornographic images even though the juvenile court might reasonably have reached a different conclusion beyond a reasonable doubt based on the youth's alternative view of the evidence).

The state relies on the *Rodriguez/Buck* cases to argue that there was sufficient evidence of sexual purpose here. The Supreme Court concluded in *Rodriguez* that "testimony supported the jury's conclusion that [defendant] had acted with a sexual purpose in holding the back of the [underaged] victim's head against her clothed breasts, while massaging the sides of his head." *Rodriguez/Buck*, 347 Or at 55. The court noted that "the touching itself did not necessarily demonstrate a sexual purpose," but when considered with evidence of past inappropriate communications between the defendant and the victim, the court could not say that a reasonable trier of fact "could not have concluded, beyond a reasonable doubt, that the touching was for a sexual purpose." *Id.* at 55-56. The court likewise concluded in *Buck*

that the defendant's "limited contact" with the underaged victim that occurred when he touched her clothed buttocks was sufficient, when considered with all the other evidence, to support a finding that he acted with sexual purpose. *Id.* at 56.

D contends that the *Rodriguez/Buck* cases are distinguishable because there was evidence in each that the defendant had previously expressed sexual interest in the victim through words and conduct, which is absent here. It is true that there is no evidence here that D had previously expressed sexual interest in J. But the Supreme Court's holding as to the sufficiency of evidence for sexual purpose and, thus, sexual contact, in *Rodriguez/Buck* is broader than D argues. Under *Rodriguez/Buck*, sexual purpose may be inferred even when the contact is brief and involves clothed intimate body parts, so long as that inference is reasonable in the context of all of the evidence. *Id.* at 55-56. Here, an inference that D acted with sexual purpose is reasonable in light of the evidence that D repeatedly touched J's penis, after and while observing pornography.

D's reliance on the absence of physical signs of arousal, such as a visible erection or the "fondling" of intimate parts, incorrectly assumes that without such evidence, sexual purpose cannot be inferred. ORS 163.305(5) does not define "sexual contact" to be the touching of intimate parts that accomplishes arousal or gratification. It is instead defined as the touching of intimate parts done for the purpose of causing arousal or gratification, whether or not that purpose is achieved. As we have explained, the evidence in this record supports the court's conclusion that D acted with sexual purpose when he touched J's penis. He subjected J to sexual contact to which J did not consent.

Affirmed.