726                    May 30, 2024                    No. 345

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of B. I. Z. V., aka B. I. V. Z.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

B. I. Z. V.,
aka B. I. V. Z.,
*Appellant.*

Washington County Circuit Court
22JU01007; A179347

Thomas A. Goldman, Judge.

Submitted March 28, 2024.

Erica Hayne Friedman and Youth, Rights & Justice filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patricia G. Rincon, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and DeVore, Senior Judge.

EGAN, J.

Jurisdictional judgment reversed and remanded for entry of judgment reflecting adjudication for one count of third-degree assault and one count of harassment.

**EGAN, J.**

In this juvenile delinquency case, youth appeals from the juvenile court's judgment finding him to be within that court's jurisdiction for an act that, if committed by an adult, would constitute assault in the third degree, ORS 163.165(1)(e) (Count 1); assault in the fourth degree, ORS 163.160 (Count 2); and harassment, ORS 166.065 (Count 3).[1] In youth's first assignment of error, he argues that the evidence was insufficient for the juvenile court to adjudicate him of third-degree assault, because the evidence did not show that he was "aided by another person actually present." In his second assignment of error, youth argues that the juvenile court plainly erred by failing to merge fourth-degree assault (Count 2) into third-degree assault (Count 1). We agree that youth's adjudications for third-degree assault (Count 1) and fourth-degree assault (Count 2) should merge, but we otherwise affirm, because the evidence was sufficient to find that youth had been "aided by another person actually present."

## I. BACKGROUND

At trial, the state adduced evidence that, when youth was 13 years old and in the eighth grade, he went into the bathroom at his school with two friends; the two friends closed and blocked the bathroom door, which is typically left open; and youth repeatedly punched a 12-year-old seventh grader, J, in the head and torso. The incident lasted approximately 30-45 seconds. Afterward, youth and his two friends ran out of the bathroom, laughing and looking over their shoulders. J was unable to stand on his own, he left the bathroom on a stretcher, and he had a concussion.

The state charged youth with conduct that, if committed by an adult, would constitute third-degree assault (Count 1), fourth-degree assault (Count 2), and harassment (Count 3).

At trial, the state presented evidence from a police interview of youth. During that interview, youth told the officer that J saw youth's friends standing by the bathroom door. Youth agreed that J might have thought the boys "were

---

[1] Youth does not raise any assignments of error relating to the harassment adjudication.

guarding the door" and "preventing [J] from leaving." Youth also said that he "would have probably thought the same, too." The officer and youth had the following exchange:

"Q   Okay. So did * * * [J] see that [youth's two friends] were there?

"A   Yeah.

"Q   Like, he—he could see them?

"A   He—yeah, he saw them.

"Q   Okay. Do you think that maybe he felt that he couldn't leave because [they] were by the door?

"A   Yeah"

The state also presented evidence from a student who witnessed the fight inside the bathroom and testified that youth's two friends closed and locked the bathroom door; a student who saw the three boys run out of the bathroom laughing; and Officer Coplin, an investigating officer who testified that the bathroom door cannot lock from the inside, the only way to engage the deadbolt was to use a key on the outside, and the door lock can be twisted and turned from the inside, which makes a noise, but does not lock the door. J also testified, and he said that he could not remember whether other people were in the bathroom during the fight, but he remembered hearing the door shut. J testified that he did not see other people in the bathroom, and he did not remember anything about whether anyone else was in the bathroom after he was on the floor.

After the state rested its case, youth moved for a judgment of acquittal, but he did not make any specific arguments. In response, the prosecutor argued that youth's two friends "were the two people standing by the door who [the student-witness] heard lock the door and were blocking the exit * * * [T]hey were aiding and abetting him while he caused physical injury to [J]." Youth argued that he did not have "any collusion with" the other boys, and he was not knowingly assisted by them. Youth also argued that the victim did not know that "other people were involved in this fight" or "were helping in the fight or doing anything otherwise." The juvenile court denied youth's motion.

During closing arguments, youth argued that the evidence did not prove that youth had been "aided" by the other two boys in the bathroom. Youth argued that the victim "had no perception whatsoever that there was anything other than him and [youth] in a fight and no one else was involved." Youth also argued that because J never attempted to leave, the state had not presented evidence that "if [J] had tried to leave, those other two people could have stopped him."

The juvenile court found youth to be within the jurisdiction of the court. Relating to the third-degree assault charge, the court found that youth entered the bathroom with his two friends "with the intention of getting in a fight. His friends did follow, were actually present and did aid in the sense of closing and blockading the door." The court also noted that the victim's "knowledge of their assistance is immaterial."

## II.   DISCUSSION

As noted, youth raises two assignments of error on appeal. First, he argues that the trial court did not have sufficient evidence to adjudicate him of third-degree assault, because the evidence did not show that he had been "aided by another person present." Second, youth argues that the trial court plainly erred in failing to merge youth's fourth-degree assault adjudication into one count of third-degree assault. We address each of those assignments in turn.

## A.   *Sufficiency of the Evidence*

As an initial matter, we address whether youth preserved his argument that the evidence was insufficient to prove that youth had been "aided by another person actually present." ORS 163.165(1)(e). The state argues that youth did not preserve that argument, because youth's arguments at trial did not indicate that the evidence was *legally* insufficient; rather, youth sought to convince the juvenile court that it should not be *persuaded* that youth had been "aided" based on the evidence submitted. The state also argues that youth's arguments did not provide the juvenile court with "enough information to be able to understand the contention and fairly respond to it." *State v. D. B. O.*, 326 Or App 384,

390-91, 532 P3d 921 (2023) (internal quotation marks and citation omitted).

We will not consider a matter on appeal "unless the claim of error was preserved in the lower court ***." ORAP 5.45(1). A closing argument can preserve the legal sufficiency of evidence for appeal, but "not just 'any' closing argument" will suffice for preservation purposes. *D. B. O.*, 326 Or App at 390-91 (citing *State v. R. W. G.*, 288 Or App 238, 240, 404 P3d 1131 (2017)). When an argument only "seeks to convince a trial court, sitting as fact finder, not to be *persuaded* by the evidence favoring the other party," the closing arguments did not sufficiently preserve a sufficiency of evidence argument for appeal. *R. W. G.*, 288 Or App at 240 (emphasis in original). When the closing arguments indicate that a person's conduct "did not fit into the elements of the charged crime," the arguments preserve a sufficiency of evidence argument for appeal. *D. B. O.*, 326 Or App at 391.

We conclude that youth preserved his argument in his motion for judgment of acquittal and during closing arguments. In youth's motion for judgment of acquittal, youth argued that he was not "aided" by the two boys in the bathroom, because the victim testified that he did not know that the boys were "involved in this fight," the victim did not know the boys "were helping in the fight or doing anything otherwise," and the two boys "did not actually help in any way." In addition, during closing arguments, youth argued that there was no evidence that the boys "could have stopped him" if J attempted to leave; "[t]here was no opportunity for anyone to assist in any way;" and "[t]here was no actual helping of any kind." Youth did not dispute the evidence that the two other boys closed and blocked the bathroom door but, rather, argued that the evidence did not prove he was "aided" by his friends. Because youth argued that the evidence did not show that the other two boys had "aided" him, which is a required element of third-degree assault in this case, we conclude that youth preserved his sufficiency of evidence argument for appeal.

We turn to the merits. We review the juvenile court's legal conclusions for errors of law, and we "review the record to determine whether the evidence is legally sufficient to

support adjudication." *D. B. O.*, 326 Or App at 385 (citing *R. W. G.*, 288 Or App at 240). To do so, we "determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the alleged act beyond a reasonable doubt." *R. W. G.*, 288 Or App at 239-40 (internal quotation marks and brackets omitted). We review questions of statutory construction for errors of law. *State v. Morgan*, 274 Or App 792, 796, 364 P3d 690 (2015), *aff'd*, 361 Or 47, 388 P3d 1085 (2017).

As previously noted, youth argues that the evidence was insufficient to prove that youth was "aided by another person actually present." Relying on legislative history, youth argues that the drafters intended the statute to cover "gang assaults" and apply to those who are "actually there, helping out," and not merely "cheering on" the attack or "holding the assailant's coat" during the assault. *See* Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2018, Mar 19, 1991, Tape 55, Side B (statement of Terry Leggert); Testimony, House Committee on the Judiciary, Subcommittee on Crime and Corrections, HB 2018, Mar 19, 1991, Ex B (statement of Terry Leggert). Youth notes that the legislature also intended "aided" to apply to those who act as a barrier to victim's escape. *Id*. Based on the legislative history, youth argues that, in order for a person to have been "aided by another person actually present" under ORS 163.165(1)(e), the other person must have actively participated in the assault. Youth argues that a person cannot actively participate if the victim does not perceive that person's presence during the assault.

Youth's arguments on appeal raise a question of statutory construction, and "[i]n interpreting a statute, we first look at the text and context of the statute, then consider legislative history if it appears useful to the court's analysis." *Morgan*, 274 Or App at 796 (citing *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993); *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009)). "[T]he court considers the context of the statutory provision at issue, which includes other provisions of the same statute

and other related statutes." *PGE*, 317 Or at 611 (citations omitted).

Under ORS 163.165(1)(e), a person commits third-degree assault when the person "[w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]" We have previously defined "aid" under ORS 163.165(1)(e) as "a legal term of art, meaning 'to support, help, assist or strengthen; act in cooperation with; supplement the efforts of others.'" *State v. Hesedahl*, 247 Or App 285, 289, 269 P3d 90 (2011), *rev den*, 351 Or 649 (2012) (quoting *State v. Pine*, 181 Or App 105, 110, 45 P3d 151 (2002), *overruled on other grounds*, 336 Or 194, 82 P3d 130 (2003) (brackets omitted)).

We further clarified the definition of "aid" in *Hesedahl*, when we decided that the defendant had been "aided" under ORS 163.165(1)(e) when his friend provided "verbal encouragement" during the assault while standing behind the defendant. *Id.* at 291-92. To determine whether the defendant had been "aided" based on that conduct, we compared the third-degree assault statute, ORS 161.165 (1)(e), to the second-degree robbery statute, ORS 164.405 (1)(b), which also requires that a person be "aided by another person actually present." *Id.* at 289-90. Based on the caselaw interpreting "aided" for purposes of second-degree robbery, we concluded that a factfinder "can legitimately infer aiding from the proximity of another person to the defendant and that person's capability to assist the defendant in exerting force upon the victim." *Id.* at 291. Thus, in *Hesedahl*, we concluded that sufficient evidence existed that the defendant had been "aided," because the factfinder "could infer that [the companion's] verbal encouragement prolonged or intensified the assault and therefore 'presented an added threat to victim's safety'" when the defendant's companion was "at hand, or within reach, sight, or call." *Id.* at 291-92.

Based on our previous cases construing "aided by another person actually present" in the second-degree robbery context, we do not construe ORS 163.165(1)(e) as narrowly as youth requests—*i.e.*, we do not understand it to require that, if the aider does not "actually aid" in the assault by physically hitting or holding down the victim, the

victim must be aware of the aider's presence. We have not interpreted "aided by another person actually present" in the second-degree robbery context to require that a victim know about the person aiding the defendant. *See State v. Jackson*, 212 Or App 51, 157 P3d 239, *rev den*, 343 Or 206 (2007) (determining that, based on the totality of circumstances, the defendant had been "aided by another person present" when his companion waited in a car about 25 feet away with the engine running). We have only required that the other person be "within reach, sight or call," and "present[] an added threat to the victim's safety." *State v. Miller*, 14 Or App 608, 611, 513 P2d 1199 (1973); *see Hesedahl*, 247 Or App at 291-92 (applying that definition in the third-degree assault context); *see also State v. McBean*, 319 Or App 122, 127, 510 P3d 233 (2022) (same). Thus, when read in context, "aided by another person actually present" does not require the victim know about the aider's presence.

Because "it is inferable that a person is aided by another actually present in causing physical injury to another if the evidence shows that the other person is in close proximity in a manner that presents an added threat to the victim's safety," *McBean*, 319 Or App at 127 (internal quotation marks omitted), the evidence in this case was sufficient for the juvenile court to find that youth was "aided by another person actually present." The juvenile court could infer that youth felt emboldened to fight J when his two friends closed and blocked the bathroom door. It could also infer that, by closing and blocking the door, the other boys blocked J from making an attempt to escape or blocked other people from entering the bathroom and ending the fight.[2] Those are reasonable inferences given the evidence presented at trial, and, based on those inferences, the juvenile court could have determined that youth's two friends "presented an added threat to the victim's safety." *Hesedahl*, 247 Or App at 291-92.

Viewing the evidence in the light most favorable to the state, the juvenile court could reasonably find that

---

[2] Although youth argues that J was not aware that the boys were in the bathroom, conflicting testimony exists as to whether J was aware of their presence, and, in evaluating the sufficiency of the evidence, we consider the facts in the light most favorable to the state. *R. W. G.*, 288 Or App at 239-40.

youth's two friends stood by, closed the door to the bathroom, and blocked that exit, and therefore aided youth in assaulting the victim. Under the totality of circumstances, the state provided sufficient evidence for the juvenile court to find beyond a reasonable doubt that youth was "aided by another person actually present."

B.  *Merger*

In youth's second assignment of error, he contends that the trial court erred in failing to merge the adjudication for fourth-degree assault and the adjudication for third-degree assault. Youth concedes that he did not preserve that argument below but asserts that the error is plain and that we should exercise our discretion to correct it. *See* ORAP 5.45. The state concedes that the trial court plainly erred.

We agree that the trial court erred, accept the state's concession, and exercise our discretion to correct the error. *See State v. Delgado*, 290 Or App 713, 714, 412 P3d 1246, *rev den*, 363 Or 119 (2018) (accepting state's concession that the trial court plainly erred by entering two separate convictions where the count of fourth-degree assault was charged as a lesser-included offense of third-degree assault); *State v. Camacho-Alvarez,* 225 Or App 215, 217, 200 P3d 613 (2009) (exercising discretion to review and correct the merger error because "the state has no interest in our refusal to do so[,] *** the burden on the judicial system in amending its judgment and resentencing the defendant is minimal[,] *** [and] the ends of justice are served by convicting and sentencing defendant according to the law").

Jurisdictional judgment reversed and remanded for entry of judgment reflecting adjudication for one count of third-degree assault and one count of harassment.